THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| HARLEY LEWIS, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : CASE NO. 3:22-CV-109-CAR |
| CITY OF MONROE; JOHN HOWARD, in | : |
| his official capacity as Mayor of City of | : |
| Monroe; ROBERT WATTS, in his official | : |
| Capacity as Chief of Police of City of | : |
| Monroe; and JOSHUA DAVID REYNOLDS, | : |
| | : |
|     Defendants. | : |
| _____ | : |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Harley Lewis filed this action against the City of Monroe, Georgia ("the

City"); John Howard, in his official capacity as Mayor of the City of Monroe ("the

Mayor"); Robert Watts, in his official capacity as the Chief of Police of the City of

Monroe ("the Chief of Police"); and Officer Joshua David Reynolds, in his individual

capacity, alleging she was unlawfully arrested by Officer Reynolds whom the City,

Mayor, and Chief of Police negligently hired, retained, and supervised. Plaintiff asserts

claims under 42 U.S.C. § 1983 and Georgia State law. Upon review of the applicable

law, the Complaint, Amended Complaint, and the parties' arguments, the Court

**GRANTS** Defendants' Motion to Dismiss [Doc. 3].[1] Plaintiff's § 1983 claims against Defendants are hereby **DISMISSED**. Because the Court dismisses the federal claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and **DISMISSES** the state law claims **without prejudice**.

## BACKGROUND

For purposes of this Motion, the Court accepts all factual allegations in Plaintiff's Complaint and Amended Complaint as true and construes them in the light most favorable to Plaintiff. The following facts are also drawn from Officer Reynold's body camera footage, which the parties do not dispute the Court can consider on a motion to dismiss,[2] and Officer Reynolds' incident report, which Plaintiff incorporates in her Amended Complaint.[3]

---

[1] Ordinarily, an amended complaint would moot a motion to dismiss the original complaint. *See, e.g., New York Life Ins. Co. v. Grant*, 57 F. Supp 3d 1401, 1409 (M.D. Ga. 2014). But "Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading." *Id.* (quoting WRIGHT & MILLER, FED. PRAC. & PROC. § 1476 (3d ed. 2011)); *Chavez v. Credit Nation Auto Sales, Inc.*, 966 F. Supp. 2d 1335, 1345 n.2 (N.D. Ga. 2013) (same). Here, Defendants contend Plaintiff's Amended Complaint suffers the same defects as her original Complaint, and thus their Motion to Dismiss is not moot.

[2] *See McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020) ("In reviewing [plaintiff's] complaint to determine whether it should be dismissed under Rule 12(b)(6), the district court properly considered both the amended complaint and body camera footage that was attached to the motion to dismiss because the body camera footage was central to the amended complaint and was undisputed.").

[3] Am. Compl. ¶ 10 [Doc. 7]; Incident Report [Doc. 6-2].

On September 29, 2020, Plaintiff and a group of over 15 teenagers, were gathered after dark in Hammock Park ("the Park") located in the City.[4] Before September 29, 2020, the City of Monroe Police Department "had an increase in complaints from the Citizens as well as City Hall about damage to the parks due to juveniles and young adults who hang out in the parking areas of the parks and litter, smoke, drink, spin tires, damage landscaping and generally loiter upon the property."[5] The Mayor had instructed the Police Chief, who in turn had instructed police officers, to keep individuals out of the Park and other locations after dark.[6] Several weeks before September 29, 2020, Officer Reynolds had "personally responded almost every night" he was on patrol "to the same complaint at Hammock Park" and thus became familiar with the faces and vehicles "that are always on location."[7] It was "always the same group of kids who officers including [Officer Reynolds] ha[d] dispersed from [businesses] and other locations throughout the city."[8] On past occasions, Officer Reynolds and other officers had given "lecture after lecture to the group about the numerous violations, and some citations ha[d] been issued."[9]

---

[4] Am. Compl. ¶ 8.
[5] Officer Reynolds Incident Report, p. 2.
[6] Am. Compl. ¶¶ 12 & 13.
[7] *Id.*
[8] *Id.*
[9] Officer Reynolds Incident Report, p. 2.

3

At approximately 8:15pm on September 29, 2020, Officer Reynolds passed the Park en route to another call and "noticed the large group" in the Park.[10] After he cleared the other call, he drove back to the Park to address the group of teenagers.[11]

Officer Reynolds pulled into a parking lot, gathered the teenagers, and addressed the group in a "stern" manner.[12] Officer Reynolds warned the group that "per order of the Chief of Police for Monroe PD, if any of you are caught in any parking lot after dark, especially this parking lot, your vehicles will be impounded, and you will be getting citations for criminal trespass. We are tired of it. I have addressed this with numerous groups of young juveniles here, and y'all continue to show up, cause property damage, and do all kinds of stupid shit that you're not supposed to be doing."[13]

As he was addressing the group, Officer Reynolds "felt that Plaintiff was looking at other individuals and laughing" and not paying attention to him.[14] Thus, he "singled [Plaintiff] out by shining a bright light in her eyes and stated, 'you can wipe that smirk off your face.'"[15] He then told her to "fucking leave right now."[16] Plaintiff responded that she did not have her car, and Officer Reynolds told her to "find a ride, go, get out

---

[10] Incident Report, p. 2.
[11] *Id.*
[12] Am. Compl. ¶ 14.
[13] Body Camera footage, 22:22-48.
[14] Am. Compl. at ¶¶ 14, 19.
[15] *Id.* at ¶ 18.
[16] *Id.* at ¶ 20.

of my face, I'm done, get out of my face, do you want to go to jail right now?, I told you to leave."[17]

The bodycam footage shows that Plaintiff did not leave. Instead, she walks toward Officer Reynolds, tells him to "put [her] in handcuffs," and turns around with her arms behind her back waiting to be handcuffed.[18] Officer Reynolds places handcuffs on Plaintiff, escorts her to his patrol car, and opens the back door; she gets in the backseat; he closes the door and goes back to address the rest of the group of teenagers. Officer Reynolds placed Plaintiff in handcuffs approximately 12-13 seconds after he told her to leave.[19]

When Officer Reynolds addressed the remaining teenagers, he told them that there were signs in the parking lot instructing them not to be there after dark; he warned them not to be "in places [they're] not supposed to be"; and then he disbursed the group.[20] Plaintiff remained handcuffed in the back of the patrol car until her father arrived at the scene to pick her up approximately ten minutes after Officer Reynolds first put her in the back of his patrol car.[21] She was not charged with any crime, and she was the only individual who was detained.[22] Officer Reynolds told Plaintiff he detained

---

[17] *Id.* at ¶ 21.
[18] Body Cam footage at 23:20-23.
[19] Am. Compl. at ¶ 22.
[20] Body Cam footage 23:58-24:50.
[21] Am. Compl. ¶ 28; Body Cam footage (23:40, placed in patrol car; 33:49, father arrives on scene).
[22] *Id.* at ¶¶ 27 & 29.

her for trespassing, and his incident report shows that he initially addressed the group for loitering.[23]

Plaintiff filed suit asserting claims under § 1983 and Georgia State Law against Officer Reynolds, the City, and the Mayor and Chief of Police in their official capacities. Defendants now move to dismiss Plaintiff's Complaint.

**LEGAL STANDARD**

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[24]  To avoid dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[25] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[27]

---

[23] Am. Compl. at ¶¶ 23 & 24.
[24] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).
[26] *Id.*
[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## <u>ANALYSIS</u>

**I.**     <u>**Section 1983 Claims**</u>

Section 1983 does not itself create any substantive rights.[28] Instead, it provides a vehicle through which individuals may seek redress when their federally protected rights have been violated by someone acting under color of state law.[29] Both municipalities and individuals are subject to suit under section 1983.[30]

Plaintiff asserts § 1983 claims against Officer Reynolds for unlawful arrest and against the City, the Mayor, and Chief of Police for maintaining a policy or custom of hiring, retaining, and supervising officers like Officer Reynolds with a known history of police misconduct and constitutional violations, and sending them out to keep teenagers like Plaintiff out of the Park after dark. As explained below, the claims against Officer Reynolds must be dismissed because he had at least arguable probable cause to arrest Plaintiff for obstruction and is therefore entitled to qualified immunity; and the claims against the City—and against the Mayor and Chief of Police in their official capacities—must be dismissed because Plaintiff fails to   sufficiently allege an unconstitutional policy or custom or any other basis for municipal liability.

---

[28] *Baker v. McCollan*, 443 U.S. 137, 140, 144 n.3 (1979).
[29] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).
[30] *Floyd v. City of Miami Beach*, 730 F. App'x 838, 841 (11th Cir. 2018).

A.        **Individual Capacity Claims against Officer Reynolds**

Plaintiff alleges Officer Reynolds unlawfully arrested her in violation of the Fourth Amendment when he singled her out of the large group, handcuffed her, and placed her in the back of his patrol car without arguable probable cause. Officer Reynolds argues qualified immunity shields him from liability. The Court agrees.

1.  **Qualified Immunity**

Where, as here, a government official is sued in his individual capacity for money damages for alleged civil rights violations, he may assert qualified immunity as an affirmative defense.[31] "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[32] "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation."[33] "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'"[34]

The qualified immunity analysis is a burden-shifting framework. "To receive qualified immunity, the officer must first show that he acted within his discretionary

---

[31] *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11th Cir. 1995).

[32] *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[33] *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).

[34] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

authority."[35] "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply."[36] The parties do not dispute that Officer Reynolds was acting in his discretionary authority; therefore, the burden is on Plaintiff to show Officer Reynolds is not entitled to immunity. "To overcome the defense of qualified immunity, [Plaintiff] must show that the officer[ ]: (1) violated federal law (2) that was clearly established at the relevant time."[37]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[38] In interpreting the Fourth Amendment, courts have recognized three types of police-citizen encounters. First, some contact, such as the mere approach and questioning of a willing person in a public place, involves no coercion and detention and hence is outside the domain of the Fourth Amendment."[39] "Second, ever since *Terry v. Ohio*, the Court has recognized a limited class of cases where the police-citizen encounter qualifies as a seizure within the Fourth Amendment but may be justified by less than probable cause."[40] "*Terry*-type investigative stops satisfy Fourth Amendment strictures

---

[35] *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).

[36] *Edwards v. Stanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).

[37] *Pullen v. Osceola Cnty.*, 861 F. App'x 284, 289 (11th Cir. 2021) (citing *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (per curiam)).

[38] U.S. Const. Amend. IV.

[39] *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir. 1983).

[40] *Id.*

if the officer has an objective, reasonable suspicion of unlawful activity."[41] "Third, some police-citizen encounters, such as full-scale arrest, must be supported by probable cause."[42]

"Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."[43] It requires only "that it be reasonable for any particular officer to conclude that there is a substantial chance of criminal activity."[44] Thus, "innocent behavior frequently will provide the basis for a showing of probable cause."[45] "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released."[46] And "[i]f an officer has probable cause to believe than individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."[47]

---

[41] *Id.*
[42] *Id.*
[43] *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).
[44] *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983).
[45] *Id.*
[46] *Washington v. Howard*, 25 F.4th 891, 899 (11th Cir. 2022) (citing *Wesby*, 138 S.Ct. at 588).
[47] *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

"Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff."[48] Arguable probable cause requires only that "under all of the facts and circumstances, an officer reasonably <u>could</u>—not necessarily would—have believed that probable cause was present."[49] "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists."[50]

What is relevant for qualified immunity purposes is "the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later."[51] It is an objective standard; the officer's underlying intent or motivation is irrelevant.[52] Whether an arresting officer possesses arguable probable cause "depends on the elements of the alleged crime . . . and the operative fact pattern."[53] Officers are insulated from false arrest claims "so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred."[54]

---

[48] *Gates*, 884 F.3d at 1298 (citing *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002)).
[49] *Crosby*, 394 F.3d at 1332 (emphasis added).
[50] *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).
[51] *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 4 (11th Cir. 1999).
[52] *Lee*, 284 F.3d at 1195.
[53] *Skop*, 485 F.3d 1137-38 (internal citation omitted).
[54] *Williams v. Aquirre*, 965 F.3d 1147, 1158 (11th Cir. 2020).

Reasonable suspicion, by contrast, "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."[55] "To have reasonable suspicion, an officer conducting a stop must have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity."[56] If reasonable suspicion exists, the suspect can be detained.[57] And "reasonable suspicion of criminal activity may be formed by observing exclusively legal activity, even if such activity is seemingly innocuous to the ordinary citizen."[58]

Here, Officer Reynolds lawfully detained Plaintiff and her group of friends based on his reasonable suspicion that they were loitering in the Park and parking lot, after dark, potentially engaging in destructive behavior. Thus, Officer Reynolds had at least arguable probable cause to believe Plaintiff obstructed his investigation by refusing to cooperate after her lawful detention.[59]

When Officer Reynolds initially stopped to investigate the group of teenagers, he knew the police department "had an increase in complaints from citizens and City Hall about damage to the parks due to juveniles"; within the "last several weeks" he had

---

[55] *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (quotation omitted).
[56] *Id.* (quotation omitted).
[57] *See id.*
[58] *Id.* (internal quotations and citations omitted).
[59] *See Brienza v. City of Peachtree City, Ga*, 2022 WL 3841095 at *6 (11th Cir. Aug. 30, 2022).

12

"personally responded almost every night" that he was on patrol to complaints of damage to the parks from "young adults hanging out in the parking areas of the parks who litter, smoke, drink, spin tires, damage landscaping, and generally loiter upon the property"; thus, he had become "familiar with the faces and vehicles" of the "kids" that were "always on location." Indeed, Officer Reynolds issued previous warnings to teenagers not to enter the park after dark; he knew that signs were posted prohibiting the public from entering the park after dark; and Plaintiff and her friends had "been told not to be in the areas multiple times in multiple different locations."[60] Thus, Officer Reynolds had reasonable suspicion to initially detain Plaintiff and her group of friends to investigate criminal activity in the park.

Having reasonable suspicion to detain Plaintiff and her friends for suspected criminal activity in the Park, the Court finds Officer Reynolds had at least arguable probable cause to further detain or arrest Plaintiff for obstructing the investigation. Georgia law provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."[61] "[V]iolence or forcible resistance is not required to prove that an officer was hindered or obstructed in a misdemeanor obstruction case. Argument, flight, stubborn obstinance, and lying are all examples of conduct that may

---

[60] Officer Incident Report, p. 2.
[61] O.C.G.A. § 16-10-24(a).

satisfy the obstruction element."[62]  "Showing arguable probable cause does not . . . require proving every element of a crime."[63] For purposes of the qualified immunity analysis, the Court looks "only to whether a reasonable officer, knowing what [Defendant] knew at the time, objectively could have believed that probable cause existed."[64]

A reasonable officer, knowing what Officer Reynolds knew at the time, objectively could have believed probable cause existed to detain Plaintiff for obstruction. In the course of lawfully investigating the teens' actions, Officer Reynolds told Plaintiff to leave; she responded that she did not have a car; he told her to find a ride and instructed her to leave a second time. Plaintiff did not leave. Instead, she walked toward Officer Reynolds and told him to put her in handcuffs as she turned around with her arms behind her back. Thus, Officer Reynolds put her in handcuffs and detained her in his patrol car. Plaintiff failed to obey his instructions, challenged his instructions, and invited him to arrest her. These actions provided Officer Reynolds with arguable

---

[62] *Pinchon v. State*, 237 Ga. App. 675, 675 (1999); *see also Stryker v. State*, 297 Ga. App. 493, 494 (2009) (clarifying that because force is no longer an element of misdemeanor obstruction, "words alone" can constitute obstruction).
[63] *Brown*, 608 F.3d at 735.
[64] *Id.* at 736 (emphasis added).

probable cause to detain/arrest her for obstruction.[65] Thus, Officer Reynolds is entitled to qualified immunity.

**B.      Official Capacity Claims**

Plaintiff's claims against the Mayor and the Chief of Police must be dismissed because they are redundant of her claims against the City. "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents."[66]

Plaintiff names the Mayor and the Chief of Police as Defendants only in their official capacities, and the City—the Mayor and the Chief of Police's employer—is a party to this action. Thus, all claims against the Mayor and the Chief of Police are hereby DISMISSED as redundant of Plaintiff's claims against the City.

**C.      Claims against the City**

Plaintiff's claims against the City fail because she has not sufficiently alleged an unconstitutional policy or custom or any other basis for municipal liability. "The

---

[65] *See Mayhew v. State*, 299 Ga. App. 313, 315 (2009) (obstruction conviction affirmed where defendant "challenged the officer to arrest him and take him to jail.").

[66] *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citations and internal quotation marks omitted).

Supreme Court has placed strict limitations for municipal liability."[67] A municipality cannot be held vicariously liable under § 1983 for the conduct of its employees unless the plaintiff can show a "municipal policy or custom that caused the plaintiff's injury."[68]

"A policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."[69] To establish that a city has a custom, the plaintiff must show "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."[70] "[A] longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."[71] Thus, "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy  'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct."[72]

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be

---

[67] *Grech v. Clayton Cnty, Ga.,* 335 F.3d 1326, 1329 (11th Cir. 2003).
[68] *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694-95 (1978).
[69] *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997).
[70] *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1481 (11th Cir. 1991).
[71] *Id.*
[72] *Griffin v. City of Opa-Locka,* 61 F.3d 1295, 1308 (11th Cir. 2001).

those of the municipality."[73]"This prevents the imposition of liability based upon an isolated incident."[74] For both policies and customs, a plaintiff must "also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[75]

1. Official Policy

Plaintiff fails to sufficiently allege that an official policy caused Plaintiff's alleged Fourth Amendment violation. Plaintiff alleges the Mayor instructed the Chief of Police to keep teenagers out of the Park after dark.[76] But a policy to keep teenagers out of the Park after dark does not constitute a policy related to proper police procedures in enforcing such a policy. That the Mayor and Chief of Police effected the policy to keep individuals out of the Park after dark—ostensibly to prevent loitering, trespassing, and property damage—bears little influence on the police department's policy for conducting investigations and enforcing the policy. That is, one may not reasonably infer the policy to keep teens out of the Park after dark extends to a policy of arresting teenagers without probable cause.

---

[73] *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting *Board of Cnty Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).

[74] *Id.*

[75] *Board of Cnty Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

[76] The Court assumes for purposes of this Motion to Dismiss that this is an official policy.

17

2. Custom or Practice/Failure to Train or Supervise

Plaintiff also fails to sufficiently allege that the City had any widespread pattern or practice of unlawfully arresting individuals in parks after dark. Plaintiff contends that the City's custom of hiring,[77] retaining, and supervising officers like Officer Reynolds, with a history of misconduct and constitutional violations, establishes a deliberate indifference to the constitutional rights of citizens like Plaintiff. Plaintiff alleges that the City failed to properly train and supervise Officer Reynolds and other unidentified officers and continued to employ them despite the Mayor and Chief of Police's knowledge that the officers had a history of police misconduct and constitutional violations.[78]

Plaintiff alleges three specific incidents in support of her allegations: (1) in December 2017, Officer Reynolds received a reprimand for pursuing a subject on a misdemeanor offense at speeds over 100 mph with no emergency equipment activated and pointing a firearm at the subject when he was in the back of his patrol car; (2) in January 2015, Officer Reynolds was involved in a use of force incident that he did not record because he failed to follow orders to get his car video system repaired; and (3)

---

[77] Any attempt to assert a claim against the City with respect to hiring Officer Reynolds fails. A § 1983 claim based on a hiring decision can stand "[o]nly where adequate scrutiny of an applicant's background would lead a policymaker to conclude that the plainly obvious consequences of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411. Liability "must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff." *Id.* at 412. Plaintiff's allegations do not support such finding.

[78] Am. Compl., ¶ 50, p. 7.

before January 2015, Officer Reynolds was involved in a use of force incident.[79] Plaintiff claims "[u]pon information and belief" that Officer Reynolds "has been involved in more incidents that will be obtained through discovery."[80]

The Supreme Court has explained that there are only "limited circumstances" from which a § 1983 claim can arise from a municipality's failure to train or supervise its police officers.[81] "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."[82] The "deliberate indifference" standard sets a high bar to § 1983 liability. It requires a plaintiff to present "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."[83] But the Supreme Court has also "left open the possibility that in a narrow range of  circumstances, the need for training may be 'so obvious' as to establish a deliberate indifference even without a pattern of unconstitutional conduct."[84]

---

[79] *Id.* at ¶ 30, pp. 4-5.

[80] *Id.* at ¶ 31, p. 5.

[81] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).

[82] *Id.* at 388-89.

[83] *Id.*

[84] *Sorrow v. City of Atlanta*, 2022 WL 2784603, *7 (11th Cir. July 15, 2022) (quoting *Gold v. City of Atlanta*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).

Plaintiff fails to adequately allege either that the City knew of, and was deliberately indifferent to, a need to train or supervise based on a pattern of similar constitutional violations or that these circumstances were "so obvious" to establish deliberate indifference. That Officer Reynolds "received a reprimand" for pursuing a subject at high speeds and pointing a firearm at him or her, or that he "was involved in" two previous "use of force incident[s]," fails to put the City on notice that he needed training or supervising on making arrests, that the City ignored that need, or that otherwise demonstrates a deliberate indifference to Plaintiff's rights. That the previous incidents and this case involve police encounters is not sufficient to transfer the need for training in one specific area—use of force—to the need for training in another— handcuffing and detaining a teenager, gathered in a group in a place they had been previously warned not to gather. As a result, Plaintiff fails to allege facts supporting the kind of widespread, known, and substantially similar constitutional violations that are required to state a municipal liability claim against the City.

## II.      State Law Claims

The only remaining claims are Plaintiff's state-law claims. But this Court is not required to hear them. Indeed, federal courts may exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original

jurisdiction."[85] "District courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."[86] Indeed, "[w]hen the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."[87] The Eleventh Circuit has repeatedly stated that "[s]tate court, not federal courts, should be the final arbiters of state law."[88] Having fully considered the matter, the Court concludes that Plaintiff's state law claims should be determined by the Georgia courts. Thus, the Court **declines to exercise supplemental jurisdiction** over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c).

## CONCLUSION

Thus, the Court **GRANTS** Defendants' Motion to Dismiss [Doc. 3]. Plaintiff's § 1983 claims against Defendants are hereby **DISMISSED**. Because the Court dismisses the federal claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and **DISMISSES** the state law claims **without prejudice**.

---

[85] 28 U.S.C. § 1367(a).
[86] 28 U.S.C. § 1367(c)(3).
[87] *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.343, 350 n. 7 (1988)).
[88] *See, e.g., Baggett v. First Nat. Bank of Gainesville*, 117 F.2d 1342, 1353 (11th Cir. 1997).

**SO ORDERED**, this 9th day of August, 2023.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT